IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Uni-Marts, LLC, *et al.*,[1] | ) | Case No. 08-11037 (MFW) |
| | ) | |
| | ) | (Jointly Administered; Plan Confirmed) |
| Debtors. | ) | |
| | ) | **Hearing Date: December 30, 2014 at 10:30 a.m. (ET)** |
| | ) | **Objections Due: December 23, 2014 at 4:00 p.m. (ET)** |

**UNI-MARTS LIQUIDATION TRUST'S MOTION PURSUANT TO
11 U.S.C. §§ 105, 350 AND 554, FED. R. BANKR. P. 3022 AND LOCAL RULE
3022-1 FOR ORDER AND FINAL DECREE CLOSING CASE AND GRANTING
RELATED RELIEF INCLUDING (I) AUTHORIZATION TO MAKE DE
MINIMIS DISTRIBUTIONS TO CERTAIN GENERAL UNSECURED
CREDITORS OF UNI-MARTS, LLC OR, IN THE ALTERNATIVE, TO DONATE
REMAINING FUNDS IN TRUST TO CHARITY, (II) APPROVAL OF THE
IMMEDIATE DESTRUCTION OF REMAINING BOOKS AND RECORDS, AND
(III) RELEASING THE TRUST, TRUSTEE AND AGENTS PURSUANT TO THE
PLAN AND LIQUIDATING TRUST AGREEMENT**

The Uni-Marts Liquidation Trust (the "Trust"), by its undersigned counsel, hereby moves the Court (the "Motion"), for entry of an order and final decree substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a), 350 and 554 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3022-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") closing the final remaining open case of debtor Uni-Marts, LLC (the "UM Case") as of December 31, 2014, and approving certain related relief, including

---

[1] The above captioned debtors (the "Debtors") are the following: Uni-Marts, LLC, Uni-Marts Ohio, LLC, Uni Realty of Wilkes-Barre, Inc., Uni Realty of Wilkes-Barre, L.P., Uni Realty of Luzerne, Inc., Uni Realty of Luzerne, L.P., and Green Valley National Accounts, LLC. Except for the bankruptcy case of Uni-Marts, LLC, the Court closed each of the Debtors' other bankruptcy cases (the "Affiliate Cases") by order dated June 26, 2012 [Docket No. 1841].

(i) authorizing the Trust to either make certain *de minimis* distributions to holders of certain liquidated general unsecured claims against debtor Uni-Marts, LLC, or, in the alternative, to donate to charity the funds remaining in the Trust following the payment of all Trust fees and expenses including without limitation obligations owed to the Office of the United States Trustee; (ii) authorizing the abandonment and immediate destruction of certain documents, books and records of the Trust (the "Records") upon entry of an order closing the UM Case, waiving compliance with any applicable local, state, and federal record retention laws, rules and ordinances, and granting relief from certain service requirements under Bankruptcy Rule 6007 to the extent it requires the Trust to serve notice of this Motion on all of the Debtors' creditors; (iii) releasing the Trust, the Liquidation Trustee and their agents in accordance with the Plan and Liquidation Trust Agreement, and (iv) granting such other relief as the Court deems just and proper. In support of this Motion, the Trust respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 350 and 554 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 3022-1.

## Background

3. On May 29, 2008 (the "Petition Date"), each of the debtors filed with the Court their respective voluntary petitions for relief under the Bankruptcy Code commencing the above-captioned Chapter 11 cases. On May 30, 2008, the Court entered an order authorizing the joint administration of these Chapter 11 cases [Docket No. 26].

4. By order dated December 30, 2009 (the "<u>Confirmation Order</u>") [Docket No. 1425], the Court confirmed the Second Amended Joint Plan of Liquidation for Uni-Marts, LLC and Its Affiliated Debtors [Docket No. 1207] (the "<u>Plan</u>").

5. Section 2.1(mm) of the Plan provides that the Plan shall become effective (the "<u>Effective Date</u>") "[i]f no stay of the Confirmation Order is in effect, the first Business Day after (i) the date all of the conditions precedent required under Section 1129(a) of the Bankruptcy Code to consummate this Plan have been satisfied and (ii) the Debtors have filed a notice with the Bankruptcy Court identifying the Effective Date."

6. Pursuant to Section 6.10(a) of the Plan and the execution of the Liquidation Trust Agreement (as defined in the Plan), the Trust was formed on May 27, 2010.

7. In accordance with Section 2.1(mm) of the Plan, the Effective Date of the Plan occurred on May 28, 2010 (D.I. 1603).

8. Pursuant to the Plan, the Confirmation Order and the Liquidation Trust Agreement, on the Effective Date, KDW Restructuring & Liquidation Services LLC was appointed as the Liquidation Trustee (as defined in the Plan).

9. On June 26, 2012, this Court entered the *Order and Final Decree Pursuant to 11 U.S.C. §§ 105 and 350, Fed. R. Bankr. P. 3022 and Local Rule 5009-1 Closing Associated Cases* [D.I. 1841], which closed the cases of all of the above-captioned Debtors except for Case No. 08-11037 of debtor Uni-Marts, LLC ("<u>Uni-Marts</u>"), which case remains open pending further order of this Court.

10. Since the Effective Date, the Trust has worked diligently to resolve pending litigation, liquidate and recover assets of the Trust, facilitate ongoing environmental remediation funded by third parties at locations previously used by the Debtors, reconcile

priority, administrative, secured and certain unsecured claims asserted against the Debtors' estates, and distributed approximately $10 million to holders of secured, priority and administrative claims against Uni-Marts, LLC and Uni-Marts Ohio, LLC, the only two bankruptcy estates with assets to distribute to creditors. Virtually all distributions to holders of allowed secured, priority and administrative claims of these estates have been made.[2]

11. As discussed with the Court at recent status conferences, the majority of general unsecured claims in the UM Case have not been fully reconciled due to cost, insufficient assets, and uncertainty regarding whether any funds would be available for such distributions. While the Trust hoped that certain litigation would result in recoveries sufficient to allow the complete reconciliation of all general unsecured claims in the UM Case, and the making of a meaningful distribution to those unsecured creditors, such litigation resulted in only very limited recoveries.

12. Following the payment of the fees and expenses of the Trust, including the payment of all obligations owed to the Office of the United States Trustee, the Trust estimates that approximately $100,000 will remain in the Trust, and that reconciliation of the remaining unliquidated claims in the UM Case would quickly consume those remaining funds, leaving nothing for distribution to general unsecured creditors in the UM Case.[3] Facing this reality, the

---

[2] The Trust believes there may be approximately four uncashed distribution checks outstanding, totaling approximately $1,400. The Trust is working to locate the claimants and effectuate those distributions, if possible. If the Trust is unable to locate such claimants, it plans to distribute those amounts either to the unsecured creditors or charity, as contemplated in this Motion.

[3] Currently, the Trust is almost completely depleted. While the Trust expects to receive approximately $180,000 before the hearing on this Motion, a portion of those funds will be used to complete the administration and wind-down of the Trust.

Trust consulted its Trust Advisory Board,[4] and subsequently decided to file the present motion to close the UM Case, and seek Court authority to either distribute the funds remaining in the Trust after payment of the Trust obligations, to the holders of large, liquidated, general unsecured claims in the Uni-Marts Case as reflected on Exhibit 1 to the Proposed Order (collectively, the "Proposed Distributees"), or to donate the remaining funds in the Trust to one or more charities or charitable funds after the closing of the UM Case.[5]

### Relief Requested

13.     By this Motion, the Trust seeks the entry of an order closing the UM Case as of December 31, 2014, and approving certain related relief, including (i) authorizing the Trust after the closing of the UM Case to either make certain *de minimis* distributions to holders of large liquidated general unsecured claims against debtor Uni-Marts, LLC, or, in the alternative, to donate to charity the funds remaining in the Trust following the payment of all Trust fees and expenses including without limitation obligations owed to the Office of the United States Trustee; (ii) authorizing the abandonment and immediate destruction of the Records upon entry of an order closing the UM Case, waiving compliance with any applicable local, state, and federal record retention laws, rules and ordinances, and granting relief from certain service

---

[4]     The Trust Advisory Board consists of representatives of BP and Exxon, two of the Debtors' largest creditors. As the members of the Trust Advisory Board would receive distributions under the proposed *de minimis* distribution mechanism set forth herein, neither member took a definitive position regarding the Trust's proposal. For the avoidance of doubt, both of the Trust Advisory Board members support both the *de mimimis* distributions proposed herein, and the donation of remaining funds in the Trust to charity.

[5]     Inclusion on the list of Proposed Distributees does not guarantee that a distribution will be made to such creditors. In accordance with the Plan and Liquidation Trust Agreement, to the extent a distribution of the funds remaining in the Trust to such individual claimant would be less than $50, no such distribution will be made. Additionally, to the extent the Trust is unable to locate or obtain necessary tax information for any of the Proposed Distributees, such Proposed Distributees fails to cash its distribution check within 45 days of the Trust mailing such checks, or any funds remain in the Trust after distributions are made and Trust obligations are paid, the Trust requests Court authority to donate such remaining funds to a charitable organization, entity or fund.

requirements under Bankruptcy Rule 6007 to the extent it requires the Trust to serve notice of this Motion on all of the Debtors' creditors; (iii) releasing the Trust, the Liquidation Trustee and their agents in accordance with the Plan and Liquidation Trust Agreement, and (iv) granting such other relief as the Court deems just and proper.

### Basis for Relief

14. Section 350(a) of the Bankruptcy Code provides that a case shall be closed "after an estate is fully administered and the court has discharged the trustee." 11 U.S.C. § 350(a). Likewise, Rule 3022 of the Bankruptcy Rules provides that, "after an estate is fully administered in a chapter 11 reorganization case, the court . . . shall enter a final decree closing the case." Fed. R. Bankr. P. 3022.

15. Local Rule 3022-1 provides that, "[u]pon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been fully administered provided that all required fees due under 28 U.S.C. § 1930 have been paid." Del. Bankr. L.R. 3022-1(a).

16. Further, section 105 of the Bankruptcy Code provides that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

17. Section 350(a) of the Bankruptcy Code provides that an estate must be fully administered prior to being closed, yet neither the Bankruptcy Code, the Bankruptcy Rules, nor the Local Rules define "fully administered." The 1991 Advisory Committee Note to Bankruptcy Rule 3022 is commonly used as a guideline to determine full administration and provides the following factors for consideration:

    a)     Whether the order confirming the plan has become final;

    b)    Whether deposits required by the plan have been distributed;

    c)    Whether the property proposed by the plan to be transferred has been transferred;

    d)    Whether the debtor or the successor of the debtor under the plan has assumed the business or management of the property dealt with by the plan;

    e)    Whether payments under the plan have commenced; and

    f)    Whether all motions, contested matters, and adversary proceedings have been finally resolved.

*See* Fed. R. Bankr. P. 3022 Advisory Committee Note (1991).

18. This Court has stated that "these factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before a case is closed." *In re SLI Inc., et al.*, 2005 WL 1668396, at *2 (Bankr. D. Del. June 24, 2005) (*citing In re Mold Makers, Inc.*, 124 B.R. 766, 768-69 (Bankr. N.D. Ill. 1990*))*; *see also In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999) (recognizing that bankruptcy courts weigh the factors contained in the Advisory Committee Note when deciding whether to close a case); *In re Jay Bee Enters., Inc.*, 207 B.R. 536, 538 (Bankr. E.D. Ky. 1997) (same); *Walnut Assocs. v. Saidel*, 164 B.R 487, 493 (E.D. Pa. 1994) ("[A]ll of the factors in the Committee Note need not be present before the Court will enter a final decree.").

19. As set forth below, an analysis of the factors enumerated in the Advisory Committee Note to Bankruptcy Rule 3022 demonstrates the appropriateness of the Court entering an order and final decree closing the UM Case and granting the relief requested herein.

20. On the Effective Date, the Confirmation Order became final and the Plan went effective. Following the sale of the Debtors' assets, only the estates of Uni-Marts, LLC and

Uni-Marts Ohio, LLC had assets to distribute or claims to adjudicate and pursue, and all assets of debtor Uni-Mart Ohio, LLC have been distributed and the Affiliate Cases closed.

21. Again, the Trust has distributed approximately $10 million to the Debtors' creditors, but lacks sufficient assets to fully reconcile all remaining unliquidated claims in the UM Case. In light of this reality, the Trust seeks to distribute the remaining funds in the Trust, after payment of Trust obligations, to either the holders of large, liquidated general unsecured claims in the UM Case as reflected on Exhibit 1 to the Proposed Order, or alternatively, to donate those remaining funds to one or more charities or charitable funds.[6] The Plan and Liquidation Trust Agreement give the Trust discretion to both donate funds remaining the Trust to charity, and to limit distributions to only those creditors that would receive distributions of at least $50 from the Trust.

22. Thus, the only remaining tasks for the Trust to complete are (i) obtain tax information and make an anticipated *de minimis* distribution of the remaining Trust assets, either through the distributions to unsecured creditors as set forth herein, and/or alternatively to a charity or charitable fund in early 2015, (ii) prepare and file final tax returns in 2015 and send the pertinent claimant trust beneficiaries grantor statements concerning their interest in the Trust, and (iii) dispose of the Records which contain sensitive information, and thus will be shredded following entry of an order closing of the UM Case and directing the Trust to either make the

---

[6] Exhibit 1 to the Proposed Order was prepared by the Trust and its professionals and reflects large, liquidated, general unsecured claims of $5,000 of more against debtor Uni-Marts, LLC from the claims register maintained by the claims agent retained in these cases, Epiq Bankruptcy Solutions. The minimum claim threshold of $5,000 is based on the total liquidated claims pool reflected on Exhibit 1 (approximately $18.3 million), the limited assets expected to be available for distribution to unsecured creditors (approximately $100,000), and the provision of the Plan and Liquidating Trust Agreement that provide that the Trust need not make distributions less than $50. Excluded from Exhibit 1 were various unliquidated claims against debtor Uni-Marts, LLC, many of which asserted claims related to unresolved litigation from prior to the Petition Date.

contemplated distributions or donate the remaining Trust Asset to charity. The Trust has filed all other tax returns required by the tax laws.

23.     Accordingly, the Trust submits that it is appropriate and necessary for the Court to enter an order closing the UM Case and granting the requested additional relief.

### Final Report

24.     Pursuant to Local Rule 3022-1(c), the Trust filed the final reports for the debtors in the Affiliate Cases on June 13, 2012 (Docket No. 1838), and plans to file the final report for the Uni-Marts Case in accordance with the Local Rules.

### Abandonment and Destruction of the Records Should be Permitted

25.     Section 554 of the Bankruptcy Code provides, among other things, that, "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Courts have held that a debtor-in-possession's decision to abandon property of the estate rests on the debtor's business judgment. *See*, *e.g.*, *In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997).[7]

26.     Here, with the closing of the UM Case, the Records are of inconsequential value, are no longer necessary, and present only a burden on the Trust. The Trust's ability to

---

[7] *See also*, *In re Dilley*, 378 B.R. 1, 7 (Bankr. D. Me. 2007) ("A decision to abandon falls within a trustee's discretion under the business judgment test."); *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) ("Courts defer to the trustee's judgment and place the burden on the party opposing the abandonment to prove a benefit to the estate and an abuse of the trustee's discretion"); *Frostbaum v. Ochs (In re Samuel)*, 277 B.R. 470, 475 (Bankr. E.D.N.Y. 2002) (internal citations omitted) (stating that "the trustee is allowed to use his best business judgment in deciding when…to renounce title to and abandon burdensome property"); I*n re U.S. Airways Group, Inc.*, 287 B.R. 643, 645 (Bankr. E.D. Va. 2002) (stating that standard to abandon property is similar to standard to reject an unexpired lease, *i.e.*, business judgment); *Blumenberg v. Yihye (In re Blumenberg)*, 263 B.R. 704, 710 (Bankr. E.D.N.Y. 2001) (finding that decision to abandon property of the estate "falls within the exercise of the trustee's combined business and legal judgment").

abandon and destroy the Records will enable the Trust to complete its final winding down process, avoid the incurrence of unnecessary storage costs, and protect the privacy of the Debtors' former employees and customers. Accordingly, granting the Trust the authority to abandon, dispose of and/or destroy the Records is in the best interest of the estate and creditors.

### Compliance with Retention Laws Should be Waived

27. The Trust seeks authority to abandon and destroy the Records without complying with any applicable local, state and federal statutes, rules and ordinances (the "Retention Laws"), if any, governing the retention and preservation of certain types of records, including, without limitation, Retention Laws related to: (a) customs, importation and exportation documents and records, (b) employee and medical records and (c) other business and tax documents and records. In the context of bankruptcy cases where the documents and records to be abandoned do not implicate any imminent or identifiable risk to the public welfare, enforcement of such Retention Laws can be waived.[8]

28. In the instant case, any requirement that the Trust retains and preserves the Records hinders the Trust's final winding down efforts and creates unnecessary expenses for the Trust contrary to federal bankruptcy policy. Moreover, given the nature of the Records, any requirement to retain them further would "not reasonably calculated to protect the public health or safety from imminent and identifiable harm." *Midlantic Nat'l Bank*, 474 U.S. at 507 n.9.

---

[8] The Supreme Court recognized an exception to a debtor's ability to abandon property pursuant to section 554 of the Bankruptcy Code in *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494 (1986). In response to this so-called public health exception, however, this Court has held that "the majority of courts have read the exception to abandonment narrowly by disallowing abandonment only where there is an imminent and identifiable harm to the public health or safety." *In re Unidigital, Inc.*, 262 B.R. 283, 286 (Bankr. D. Del. 2001). Consequently, debtors should be permitted to abandon property, absent an imminent harm to the public health or safety, when the decision to do so is made pursuant to the exercise of the debtor's reasonable business judgment.

Accordingly, the Court may permit the Trust to abandon, dispose of and/or destroy the Records that the Trust would otherwise be required to keep. *Cf. N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 523-24 (1984) (permitting a debtor-in-possession to reject contracts where rejection would otherwise cause a violation of the National Labor Relations Act).

29. For the reasons discussed above, the Trust requests that the Court waive compliance with any Retention Laws restricting the Trust's abandonment, disposal and/or destruction of the Records.

### Relief from Bankruptcy Rule 6007 is Warranted

30. The Trust also requests relief from Bankruptcy Rule 6007 to the extent it requires the Trust to serve notice of this Motion on *all* of the Debtors' creditors. Bankruptcy Rule 6007 provides, in part that:

> *Unless otherwise directed by the court*, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, *all creditors*, indenture trustees and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code.

Fed. R. Bankr. P. 6007(a) (emphasis added).

31. The Trust believes that serving notice of the Motion on all creditors would be costly and provide negligible benefit to the estate and creditors and respectfully submits that providing notice to the U.S. Trustee and all parties that have filed a notice of appearance in these cases pursuant to Bankruptcy Rule 2002 (but not to all creditors) will effectuate the goal of adequate notice while at the same time advancing the goal of preserving estate assets for the benefit of creditors.

32. Accordingly, the Trust submits that modifying the notice requirements of Bankruptcy Rule 6007 is in the best interests of the estate and creditors.

### Discharge of the Trust, Liquidation Trustee and Agents

33. Article 8.4 of the Liquidation Trust Agreement provides:

<u>Continuance of Liquidation Trust for Winding Up; Discharge and Release of Trustee</u>.  After the termination of the Liquidation Trust and solely for the purpose of liquidating and winding up the affairs of the Liquidation Trust, the Liquidation Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the distribution of the Trust Assets including all excess reserves, the Liquidation Trustee shall be deemed discharged and have no further duties or obligations hereunder. **Upon a motion by the Liquidation Trustee, the Bankruptcy Court may enter an order relieving the Liquidation Trustee, its agents and employees of any further duties, discharging and releasing the Liquidation Trustee from all liability related to the Liquidation Trust and releasing the Liquidation Trustee's bond, if any.**

Liquidation Trust Agreement, at Art. 8.4 (emphasis added).

34. By this Motion, the Trust also seeks release and discharge of the Trust, Liquidation Trustee and their agents and employees pursuant to Article 8.4 of the Liquidation Trust Agreement.

### No Prior Request

35. No prior request for the relief sought herein has been made to this or any other court.

### Notice

36. Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of Delaware; (ii) the general service list established in these chapter 11 cases, the parties listed on Exhibit 1 to the Proposed Order, and certain creditors with unliquidated claims who would not receive a distribution from the Trust. In light of the nature of the relief requested, the Trust submits that no other or further notice is necessary.

WHEREFORE, the Trust respectfully request that the Court enter an order, substantially in the form attached hereto, closing the UM Case as of December 31, 2014, and approving certain related relief, including (i) authorizing the Trust after the closing of the UM Case to either make certain *de minimis* distributions to holders of large liquidated general unsecured claims against debtor Uni-Marts, LLC, or, in the alternative, to donate to charity the funds remaining in the Trust following the payment of all Trust fees and expenses including without limitation obligations owed to the Office of the United States Trustee; (ii) authorizing the abandonment and immediate destruction of the Records upon entry of an order closing the UM Case, waiving compliance with any applicable local, state, and federal record retention laws, rules and ordinances, and granting relief from certain service requirements under Bankruptcy Rule 6007 to the extent it requires the Trust to serve notice of this Motion on all of the Debtors' creditors; (iii) releasing the Trust, the Liquidation Trustee and their agents in accordance with the Plan and Liquidation Trust Agreement, and (iv) granting such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: December 9, 2014<br>Wilmington, Delaware | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>*/s/ William M. Alleman, Jr.*<br>Derek C. Abbott (DE No. 3376)<br>William M. Alleman, Jr. (DE No. 5449)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>-and-<br><br>KELLEY DRYE & WARREN LLP<br>Gilbert R. Saydah Jr., Esq. (DE No. 4304)<br>101 Park Avenue<br>New York, New York 10178<br>Tel: (212) 808-7800<br>Fax: (212) 808-7897<br><br>*Counsel to the Uni-Marts Liquidation Trust* |